Chief Judge Rader, and may it please the Court, Abbey Wright, on behalf of the Acting Director of the Office of Personnel Management. If I may, I'd like to reserve ten minutes of my time for rebuttal. Certainly, go ahead. In its order granting in-bank review, this Court directed the parties to address four questions, and I'd like to begin with the first question, which addresses the central issue in this case. The principles set forth in the Supreme Court's decision in Egan apply with equal force to the determination that an employee is ineligible to occupy a national security-sensitive position. The determination that an employee is eligible for security clearance and a determination that an employee is eligible for a national security-sensitive position are the same. They involve the same affirmative, predictive judgments, guided by the same adjudicative criteria, and governed by the same standards. Whether eligibility can be granted is clearly consistent with the interests of national security. As the Supreme Court explained in its decision in the Department of Navy v. Egan, the Constitution vests the President with the power to protect the national security, which includes protecting our nation's borders, our interests abroad, and our nation's people from threats to national security. So do you have to find authority, then, in a presidential executive order to do what you're doing? Your Honor, the President has delegated that authority to agencies in Executive Order 10450. But that's not, you're not answering my question. Do you have to find that there is an executive order delegating that authority to you? Well, the Supreme Court's decision in Egan, it speaks of Executive Order 10450, but it agencies to make these kinds of decisions. So what's the answer? Does there have to be an executive order or not? Your Honor, I don't know if there has to be one. There is, in this case. The President could delegate, via other means besides an executive order, his constitutional authority. It may be the case that, even absent that, agencies are simply better positioned than the Board. And we look to the CSRA, the text of the CSRA, to see what the scope of the Board's review is. And it's our position that, just as it was in Egan, that the Board's review of adverse actions doesn't extend to the underlying national security determination. As the Supreme Court said in Egan, a security clearance determination, and likewise here, an eligibility determination, is not itself an adverse action. And nothing in the CSRA empowers or directs the Board to go beyond review of that adverse action itself. And so that's our, that's our position here. Is it your view, though, that the President could delegate his authority in silence by the fact that agencies are created? I don't think that, that doesn't mean, our position doesn't require that, Your Honor, because Executive Order 10450 was issued in 1953. It's been a law since then where the President directly delegated his constitutional authority to agencies to classify positions as sensitive, and then to determine which individuals may occupy those positions, clearly consistent with the interests of the national security. But what this Court is doing, and what the Supreme Court is doing in Egan is, like I said, interpreting the civil service reform. What does, what did Congress direct and empower the Board to review? It's our position here that was in Egan that that doesn't include the underlying national security eligibility determination. The Board's review is limited to determining whether the position was in fact designated as sensitive, whether, in fact, the employee's eligibility was revoked or denied, and then whether procedural, the procedures that were required were followed. And that's, that's the scope of the Board's review. So are you arguing that the President's power is plenary, that, for example, he could extend, cover all, all civil service employees as national security positions? Well, Your Honor, to be clear, Executive Order 10450, of course, requires designation of sensitive positions where the occupant could have a material adverse effect on the national security. And the President has great authority to protect the national security, but he has, in Executive Order 10450, limited that, directed agencies to focus on those positions where there could be that material adverse effect on the national security, and to designate those positions as sensitive. All parties, in this case, agree that that issue is not for this Court, and indeed that the designation of positions is not something subject to Board or judicial review. Well, so we're talking about the removal power, and your problem is that 10450, as construed by the Supreme Court in Cole, says that 10450's removal powers are only in accordance with 7532. Well, we're talking about the Civil Service Reform Act, which was, of course, enacted in 1990. No, I'm talking about 10450. I'm talking about the scope of 10450. You're relying on 10450, but 10450 in Cole, insofar as the removal power is concerned, Supreme Court in Cole says 10450, insofar as it deals with the removal power, is only implementing 7532, and it's very explicit about that. That's correct. That's correct, right? Well, one section of 10450 is the removal power under what is now codified as 7532. That's correct. But as the Supreme Court recognized in Egan, there's a two, what it does, so there's section 7532 removal authority, and then there's the authority that an agency can remove an individual for cause, and then 7513 applies. Well, then how does Executive Order 10450 help you if its discussion of the removal power and its delegation of the removal power is confined to 7532, the way the Supreme Court said in Cole? Well, section, sorry, excuse me, Executive Order 10450 has a number of sections, and one of, section three talks about the designation of positions. Section, I believe, eight talks about how you determine who is eligible to occupy such a position, and section six is what now is 7532. So I think they have independent existence, each section. I don't, I think that section three and section eight have bearing in all circumstances, regardless of whether we're going down the 7532 route or we've gone down the 7532 route. But those sections don't talk about removal, right? They don't talk about removal specifically, but what we have is an eligibility that, the position requires that you be eligible for a national security sensitive position. So when you lose that eligibility, you're no longer able to hold that position. I mean, at that point, an agency can remove you simply because you haven't met one of the requirements for your position. So the removal authority is not under 7532. It's a for-cause removal, but the cause is that, and this is exactly what the Supreme Court described in Egan with respect to security clearances, the cause is that you no longer have something required for your job. Can I move you to a more practical application? Sure. I just want to understand how this is practically applied in your version of how things should operate. If I have an employee who's a non-critical sensitive position, and that employee is chronically late, if I decide I want to discipline that employee by suspending him or her for 15 days, that is, that action would be clearly reviewable by the MSPB. That's correct. Under the standards of promoting the efficiency. That's correct. And so forth. Yes. If I decide the lateness problem is chronic enough that I want to get, I really have to fire the employee, then if I fire the employee simply because they're chronically late, that action would also be subject to MSPB review, correct? That's correct, Your Honor, yes. However, if I think about it a little more and say, well, this person is chronically late, so how can I really trust this person to get the job done, that can be cabined, can it not, very easily into a trustworthiness issue. And if it's called, then, a trustworthiness issue, then I say, hmm, let me think about this. This person can have a security clearance. I take away the security, not security clearance, I'm sorry, the sensitivity clearance, and therefore, my action of firing this person would not, that action would not be subject to MSPB review. There's a couple of responses, Your Honor. The first is with respect to, when you mentioned security clearance, it's the same, of course, would be true in the security clearance context that someone could say, a certain instance of misconduct could raise security concerns or security concerns. The same is true of the eligibility determination. You're right. There are instances of, and I don't know if chronically, that's kind of hard for me to imagine, but there are definitely misconduct cases where it's both misconduct and it raises a security concern. And at DOD, there's guidance as to when supervisors and, indeed, any employee should refer information to the adjudication facility where there is a security concern that's been raised. Now, and at DOD, it's a separate facility that makes that determination. So, it would It's not a very good way to go about it because you've got to give the information to the security folks and they make an independent determination. They evaluate that information and they decide whether further investigation is required. So, there is that separation. This Court recognized that in the Hess decision that there is a separation between those who are making the security determinations and those supervisors who may be in a position who may be annoyed and seek to get, to be rid of troublesome employees. But I think Your Honor's question makes a very good point, which is that even individuals in sensitive positions have adverse action rights when it's misconduct, when it's poor performance. The Board reviews those in exactly the same way it would. And even where the action is taken because of the revocation of an eligibility determination, there still is review of whether the proper procedures were followed. And this Court has review of that as well in the security clearance context. There are a number of cases where this Court has looked to see whether the procedures were followed that were required. Would one of those procedures be the question of whether there was a non-sensitive position available to move the person into? So, for instance, I mean, you say it's not an adverse determination, but I'm sure these employees who were demoted or suspended felt that there was something adverse that happened to them. So, the question is, even if you couldn't review the sensitivity determination, could you review whether or not there truly had been a fair consideration of an alternative placement? Well, this Court has held that where there is an agency regulation or another law that provides for transfer to a sensitive position, that the Court can review whether that's been followed. And so DOD, I believe, does have a regulation that requires looking for a non-sensitive position within. So, for example, Mr. Northover was determined to be ineligible for his non-critical or non-sensitive position. He was moved to a non-sensitive position because there was one available. And if that position was not at the same grade in pay, but had it been the same grade in pay, there would have been no adverse action, which I think demonstrates the separation of the adverse action itself from the eligibility determination. Given your concession that there are things that are reviewable by the Board, which include those issues and the proper procedures, and whether or not the position was in fact classified as sensitive, how can this truly be a collateral order for purposes of vesting up with jurisdiction? Well, I think the question of the scope of the Board's review is, it was conclusively determined, it's collateral to the merit, and as this Court held in August 2011, it imperils the substantial public interest. If we are forced to go back on remand, we'll be forced to adjudicate, demonstrate, and explain the national security basis for the eligibility determination itself. And this Court held that that raised the sort of substantial public interest and values of the highest order that the Supreme Court talked about in its cases. But didn't you just give us this morning some regulations that you're going to make public that are going to help define the circumstances under which you make those kinds of determinations? So if that's the case, if there are going to be public regulations that discuss how these determinations are made, why would that be any different for purposes of having a discussion before the Board, even putting aside the ability to make those proceedings  Well, those rules, Your Honor, are with respect to the designation of the positions as sensitive or not. What I was discussing were the determination that a particular individual is not eligible to hold a sensitive position, which that's the determination that the agency makes that it's not public. It's based on some publicly available criteria, the judicative guidelines that DOD uses. But the decision-making, the weighing of risks, the determining what's an acceptable margin of risk, what sort of risk does this employee pose, that's not been disclosed. It's something we argue we don't have to disclose, we don't disclose. And that's what will be in peril if the Board's orders are not reviewed now rather than if we're forced to go back on remand. One of the things that you are repeatedly saying, as I understand it, is that you view designation of a sensitive position as coextensive or synonymous with national security concern. Is that right? The designation of the position itself is designated based on the adverse effects that the employee could have on the national security. Well, and I understand that from the new reg that you just submitted, the OPM reg, because it only has two categories. Number one, secret confidential information. Number two, not having access to classified, but potentially cause significant damage to national security. So no one could be designated as sensitive unless there was an absolute national security concern under the proposed reg, correct? That's right. And that's, there are regs. Okay, okay, okay. But the 154.13, which currently defines the Department of Defense's designation of sensitive, as I read it, allows for the designation of positions as sensitive, which have nothing to do with national security. For example, fiduciary responsibilities, contracting authority. You know, there are a whole list of things here. And then there's the great catch-all, any other position the head of the component or designee would like to designate. So it's currently, the regs, as applied to the individuals involved in this case, do not limit designation of sensitive positions to people who have a serious impact on national security. So why should EGAN be extended to every position the DOD has heretofore designated as sensitive, when it may very well be the case that many of those designations are not on the basis of national security? Well, I think even though the list there doesn't have national security in each one, DOD employees are part of a mission of preserving the military strength of the United States. And so even, one of the things is access to certain databases, and that's what Ms. Conyers had as well. That's access to military pay databases. And so DOD, in its discretion, has determined that people with those responsibilities and that access do have a material adverse effect on the national security. Now, as I stated before as well, all parties in this case, no one here is saying that the agency's discretion is important. No, no, the position designation is committed to the agency's discretion. But if we determine that the designation of sensitive extends to more than, by the agency's own regulations, national security interests, then there's a question of whether EGAN should apply blanketly to all positions designated as sensitive, it seems to me. Well, I will respond. I think the positions that DOD designates are those under 10450, and they do concern the national security. But I want to point out the breadth of support. Well, it's nice of you to say, but there are regulations that allow for a broader designation. And, in fact, when I look at Ms. Conyers' designation form, which is found in the appendix at JA-164 and 165, I see there are seven categories of boxes labeled national security, none of which are checked for her position. And then there is another box right under that, which causes me sort of the greatest cause, which is you could designate a position as sensitive if it involves the public trust dashed a risk to the efficiency of service. Boy, that sounds right up the MSPB's alley. This efficiency of service language appears in every case we get from them. And then when you read the very fine print, which I have to pull out my reading glasses for, but when you read the very fine print, it tells you that basically if you have any financial fiduciary responsibilities or contracting authority, you're covered. You're considered appropriately designated as sensitive if you simply have fiduciary or contracting authority, that would meet with this criteria. Now, I realize that's not the box checked for Ms. Conyers, but it goes to my bigger point, which is heretofore you seem to have over-designated as sensitive well beyond national security without even representing that it's national security. Because there were seven boxes you could have checked on this form for national security and none of them are checked. What do we do with that? Well, I think, I mean, the first thing I think is that the board decisions are very broad and they sweep in everybody. So even if this court has a hesitation about a certain area, a certain position, I think the board decisions have to be reversed. Because the board has said EGIN only applies where there's access to classified information. And we submit that can't be right. So with respect to over-designation, there are a number of executive branch and perhaps even Congress checks on that. So the President himself could issue a court. So we can't do anything about over-designation? Your Honor, I think that's not an issue for this court. I think it's an issue for the executive branch. The President could issue further policy directives, executive orders. Well, over-designation might be an issue for the executive branch. You may be right that we don't have the authority to review that. But what you're asking us to do is to take EGIN and apply it to all sensitive positions under the logic that they apply equally to the security clearance issue, which was an issue in EGIN. But if we decide that you're incorrect, that the designation of sensitive is not consistently limited to national security cases, by your own definition, regulations, and forms, you allow for that designation, then how does EGIN possibly apply to those positions? Well, EGIN, I think they are two separate questions. I mean, EGIN applies where the President is acting to protect the national security, which the President has done in Executive Order 10450, and given the agency's discretion to make determinations of who is eligible to hold a sensitive position. And I understand, Your Honor, has concerns about the designation of those positions. Not the designation. I don't care if the designation is sensitive. I just want you to represent to me that they're only sensitive because they involve national security. But both your regs and your form say the opposite. Well, Your Honor, with respect, DOD's forms talk about a lot of different things that DOD employees can do. But they're employees of the Department of Defense. When they have access to these security systems, they have the ability to have the adverse effect on national security. And DOD did not, when DOD issues the regulations that it has, and these forms, is implementing Executive Order 10450. It is designating positions because it believes they could have a material adverse effect on the national security. And what percentage of employees in DOD are not so designated? So DOD has approximately 800,000 civilian employees. 300,000 are non-sensitive. 300,000 have security clearances, and then 200,000 are the people we're talking about today. And the people who have security clearances are within the category of the 500,000 people. That's right, Your Honor. So there are 200,000 who are classified as somehow national security that do not have a security clearance. That's correct. That's correct, Your Honor. You argue, and I admittedly in the alternative, but you argue that the whistleblower issues are not really before us because there's no whistleblower claim here. That's correct. And so the question of whether or not the rule that you're asking for would be preemptive of whistleblower claims or the Congress's authority over whistleblower claims is not really before us. How can that be true if your argument is that this is a collateral order that is unrelated to the merits? I mean, we either cannot review these cases or we can. And whether it's discrimination under Title VII or a whistleblower retaliation that's alleged, how would that make a difference given your argument regarding the collateral order? The petition that OPM brought to this court, Your Honor, asked the court to address the question of the scope of the board's review under the CSRI under Chapter 75, not under Chapter 23 of the Whistleblower Protection Act. And as you state, Ms. Conyers and Mr. Northover have not alleged that they made any protected disclosures in this case or that there are whistleblowing allegations here. So the legal question we're asking the court to resolve on the collateral order doctrine is scope of the board's review under the Civil Service Reform Act, which we have not briefed. We have not brought to this court any arguments regarding the Whistleblower Protection Act. Can you help me on that? We do have a prohibited personnel action case, a discrimination case, 2308b1. Mr. Northover's? Yes, Mr. Northover's. What would be the beginning of a textual basis for distinguishing that from the whistleblower subsection 8 to 9? Because it may well be that our view about whether what we're going to say encompasses whistleblowers or not affects what we're going to say. Well, in this court's decision in Hess, when this court held that security clearances were not personnel actions under the Whistleblower Protection Act, the court looked at the legislative history, which actually addressed security clearances, and drew some conclusions from that. And so I think the Whistleblower Protection Act question is going to require the court to do an analysis of that sort in the future. And so we've not taken a position here on that issue. And I think it would be an issue the court would have to grapple with in an appropriate case. So no, your answer is you don't actually have a textual basis for distinguishing the whistleblower situation? Because you didn't refer to any. I don't know of a textual basis. I know when this court in Hess looked at the legislative history, that was an important step of the decision. And so that would be something the court would need to look at. But that was a way of saying, notwithstanding that Section 1221, the individual rights provision, applies only to whistleblowers, whistleblowers nevertheless were still litigation. The possibility that, at least I'm asking about, is what basis might there be for a Well, Your Honor, I don't, obviously, I don't want to take, we haven't briefed it, and I don't want to take a position now on how Egan exactly would apply. I'm just looking for the beginning of a textual analysis, that's all, not the resolution of it. I don't know. I looked for one, and I couldn't find it. That's why I'm asking. Yeah, and I unfortunately can't supply one at this point as well either. But again, as I said, in Hess, the court said the fact that there was, with respect to security appearances, there was a push in Congress to include it, and then it was removed. They thought that was significant. And so there would be a similar analysis of the legislative history there. Would you like to save the rest of your rebuttal time? I would if I may, Chief. Thank you. Thank you. Mr. Coriolis. May it please the Court, Andy Coriolis for Rhonda Conyers and Devon Northover. I'd like to address one thing that came up, and that is we do not believe that the determinations of occupancy in a hold sensitive position and eligibility for a security clearance are at all the same. As we believe Egan demonstrates, as well as Cole and the cases that Egan relies on, as well as the executive orders controlling classified information, the classified information is in fact different, special, and is treated differently. And going back to Executive Order 10450, OPM cannot find any support there. Section 6 of that order is the removal power that is now in 7532, and that is where the clearly consistent standard derives from. Congress set a different standard for adverse actions, and that standard is in 7513A, and that standard set by Congress is the efficiency of the service. There is no conflict between these two standards because they apply to different actions. Speaking of clear and consistent standards, I know I think one of you was reluctant to make at least a suggestion that in these kinds of national security cases, the MSPB would apply a more deferential standard. Am I right about that? What I believe we argue, what the individual respondents argued in answer to that question, we argue it here, is the MSPB already applies a highly deferential standard to adverse actions to agency penalty determinations. The MSPB applies an abuse of discretion standard. But with regard to merit determinations, it's a preponderance of evidence. And the suggestion in the briefs, I think, was made to point out cases where in these kinds of circumstances, the Board may very well defer and apply an arbitrary or reasonableness standard or so forth. And I just wondered if that's your answer to us, which is it's going to be okay, people, because they're going to allow deference where deference is warranted. I wonder what the textual basis is for that distinction in standards between these different types of cases. I think the answer to that is twofold. We don't know, sitting here today, exactly what the Board will do, which we believe is another reason why Egan should remain confined and any expansion should be left to Congress. So we ought to consider this. When we consider how the alternatives the parties are pressing for us in terms of resolving this case work, then you're telling us we ought to assume, therefore, that the MSPB will be applying the standards, the preponderance of evidence standard, to these types of cases just as it does based on the statutory constraints to all of the cases, right? We do not believe there's any need to assume. The Thompson case that we cite in our brief, I believe on either page 52 or 53, shows the MSPB deferring to an agency as to the requirements for a position. So if we're supposed to assume, therefore, on the other hand, that there will be a more differential standard applied, what is the textual basis for the application of different standards based upon different cases? Your Honor, I believe, in part, that would go to the MSPB's statutory authority to consider these cases in the first instance. Congress left to the Board a great deal of discretion in treating these cases and in considering these cases. What Congress imposed on the Board was the preponderance of the evidence standard, the efficiency of the surface standard. And that's the standard that the moving party has to meet. Is there any basis for someone saying that in certain types of cases, that standard will not be the applicable standard and it will be a more differential standard that's applied? We believe the basis for that is in the Board's case law itself. I cannot point to the statute and... But do you think the statute, you're considering the statute as leaving room for the Board to apply different standards in different types of cases? The statute, we believe, leaves room for the Board to apply deference while still holding agencies to the statutorily imposed standard of efficiency of the surface. That's the import of the Thompson case, which is showing deference to the agency in terms of the agency gets to set the qualifications for the position. So there is no tension there. The Board is deferring to the agency as the Board defers to an agency in a penalty determination. You know, the Board defers to an agency and says, we're only going to look at a penalty determination if it is an abuse of discretion. But that's a different universe, right? I mean, there are two different standards that apply. That's a given under the case law and under the statute. I'm only talking about the standard of preponderance of evidence, which goes to the underlying merits of the case, not to the penalty date. Now, Congress has set that standard. If Congress wanted to set a different standard as they did in Chapter 43, they could have done so. They had not. So preponderance governs. That is the standard. So if a TSA inspector has relatives in Afghanistan or Chechnya and the agency determines that her employment is inconsistent with national security, that's reviewed on a preponderance of the evidence standard. Assuming we're talking about a TSA employee who has adverse action appeal rights, I can't answer that question completely because TSA employees are treated differently due to ASSA. However, if we're talking about an employee who has adverse action appeal rights similar to a Title V employee, then yes, they're going to review the case under the preponderance of the evidence standard unless, of course, there is an affirmative defense or some other defense that would require the board to impose a different standard. So in your gray brief, you say, it is similarly unpersuasive for OPM to hinge its argument that EGIM should apply on speculation that employees without security clearances may in some far-fetched scenario pose a more immediate risk and direct risk to national security than some current employees who have security clearances. And then you go on with your, it may rain tomorrow or not. So there are a number of people at the borders, for example, who don't have security clearances and yet you'd agree that their detection methods are, while not classified, necessarily observable. And if they tell their friends about those detection methods, it can have a severe impact on the United States. The problem with that argument, Your Honor, is that it's not in the record. And all it does is demonstrate that if there's a balancing here, Congress sits in a better position to make that call than this court does based on the record before it. As well, these individuals… But it's exactly the rationale of EGIM, is it not? But what was different and what was special about EGIM, what allowed EGIM to make that incursion into the CSRA was the particular and special nature of classified information. If you look at, throughout EGIM, the court refers again and again to classified information. And even in the passages… They also refer to national security information. They do indeed, Your Honor. But when you go to those particular passages, if you look at them in context, for example, on 527 of EGIM, where the court, I believe, uses the phrase national security information, or where the court uses broader language, the court prefaces those passages by reference to the executive's power to control and classify information. And then the court goes on to cite authority that stands for the proposition that it is unique and that it is special. Can I ask, though, if I was thinking about the President's responsibility to protect national security, it would not occur to me to think that categorically information control is separate and apart from all other possible risks to national security. It's true EGIM was about classified information. But the question is why other threats to national security that a person without access to information is not subject to the same rationale, not covered by the text of EGIM, but by the same rationale. What's so special about information? Because they are undefined. They are not ascertainable in the way that classified information is. We look here in this case at very different, a very broad and undefined spectrum of cases and agencies that OPM is seeking to expand EGIM to cover. And let us not forget, although the agency here is the Department of Defense, the rule that OPM is asking for would be a government-wide rule. It would expand far beyond the Department of Defense to agencies where there is no information in this record as to how they treat these types of determinations or how they treat these types of cases. And that's the difference we see between these cases and EGIM. Isn't the answer partly that, as EGIM said, the President has historically been the one to control classified information, to determine how it should be classified, who should have access to it, and how the access should be denied. There's a specific executive order at the time of EGIM dealing with denial of access to classified information in saying that the determination that's made there is finite. There's no similar history with respect to the removal of people for other supposed national security issues. That hasn't been covered in the same way by executive orders. That is exactly right, Your Honor. That is the difference between Executive Order 10450 and 13526 and 12356, which are the orders covering classified information are so detailed, creating such a lengthy established framework, versus 10456, which stands for a general proposition that the heads of agencies have to designate positions as sensitive or non-sensitive for national security purposes. It's entirely different from how the executive orders, as well as the law, treats classified information. Let me just ask a follow-up to your question, which goes back to Judge Moore's earlier question to your friend and the government, which is that is it your position that if we decide this case as OPM is urging us to do, that nationwide all federal employees who are designated as non-critical sensitive, and I assume there are those kinds of designations in every federal agency, that those employees would automatically come under this rubric of national security? We believe that to be the case, that the minute this, any time we have two conflicting, we would be in a position of having two powers that we've now given to the government. On the one hand, the government has, as we've seen, an unreviewable power to designate a position as sensitive. There is no way to bring that determination to a neutral third party. If now we add a third option where now these sensitive positions, which we know very little about outside of the Department of Defense, are now under the rubric of EGAN across the board of the government, then there is nothing to prevent, as I believe your questions earlier were indicating, an agency from taking any type of adverse, what would otherwise be an adverse action, under the rubric of an eligibility determination, and that would completely undercut the very purpose of the CSRA. But are any of those positions in other agencies, like the Department of Agriculture or whatever, or all of those clearance positions that are non-sensitive or whatever, those aren't under the rubric of the executive order or under the designation of a national security criteria, right? There's insufficient evidence in this record to really answer that fully. There are other agencies that we would not ordinarily, I believe, think of as national security agencies where they may designate a position as sensitive. Agriculture may have food and poultry inspectors, for example. They may say they have some interest in protecting the integrity of the American food supply. Do we now say that we can designate them as sensitive and they should fall under EGAN? That is the problem with the government's argument. It has no limit. You keep saying, though, that you've done it variously here, that either incursion into CSRA, or in your brief you said we're collapsing the whole CSRA. Part of the problem is that in EGAN, at least the Supreme Court said that it was supporting its view by an interpretation of CSRA itself, and it said that whether you get a security clearance or not is not an adverse action within the meaning of the CSRA, even if ultimately an adverse action would flow from that. How do we draw a line between that holding and your view that somehow it is an adverse action to lose a sensitivity designation? Allow me to clarify. I don't believe we're arguing that it's an adverse action to lose eligibility. Rather, it is similar to the Jacobs and Adams cases cited in Arbery's, that it's the withdrawal of a qualification where the board, historically, and has been affirmed by this Court, has the power to review the merits of a withdrawal in the course of reviewing an adverse action arising from that. What's your basis for saying in your blue brief that if certain information poses an identifiable and serious risk to the national security, that it will more likely than not be classified? Because, Your Honor, Executive Order 13526 requires that that exact specific type of information be classified.  So the observations by the person on the border who sees means and methods of determining whether somebody is suspected as a terrorist, how does that get classified? If I were to – I see that my time is up. Please answer the question. Thank you. Your Honor, it would be speculation for me to say, and my speculation would be, there are going to be post-orders. There are going to be – there's going to be paper issued by that agency indicating rotations of assignments, methods of detection, all of those types of things. It may be that that agency stands in a position to classify that information. I can't say that because that evidence is absent from the record. Thank you, Mr. Berhoff. Thank you. Mr. Goger? May it please the Court, Jeff Goger for the Marine Systems Protection Board. This case has much more in common with Cole than it does with Egan. Like Cole, the employees here don't have security clearances. And like Cole, the government here is arguing that that fact does not matter, that based on an assertion of national security, statutory procedures do not apply. Of course, in Cole, the Supreme Court rejected that. And as the Supreme Court rejected that, so should this Court reject OPM's argument here. OPM is effectively asking this Court to create – well, it is asking this Court to create a government-wide, not just for DOD, but government-wide exception to the CSRA that would affect – hundreds of thousands of federal employees from their basic protections, not just from non-meritorious actions and from arbitrary actions, but also from all kinds of prohibited personnel actions, which includes discrimination. Can I ask, since we have only a DOD case here, maybe two, depending on jurisdiction, why would we have to address anything beyond the question of looking behind the ineligibility determination by DOD? Because Egan itself, which is the basis for OPM's argument here, is a government-wide case. It's not limited to DOD. Although Egan was a DOD employee, we've seen that Egan's been applied to many other agencies besides DOD. Suppose we were just – at least suppose we were just focusing on the question as applied in the case or cases that we have in front of us. How much of your argument would be an attack on the same conclusion applied just to DOD as opposed to the broader, more sweeping conclusion? Because as OPM points out, the board's conclusion was equally sweeping in the other direction. Well, if this were just about DOD, my argument would be this. Congress is well aware that DOD has a national security mission. And in fact, in 2003, it even passed legislation at DOD's request and gave it special authority to create its own system. Eventually, after four years, Congress repealed that authority. So Congress has considered this and is aware of the national security mission of DOD. And it has allowed for MSPB review anyway. Well, in 1996, the DOD went to Congress and secured a special statute, 10 U.S.C. 1069, which gave them the power with respect to the intelligence components of the Department of Defense to eliminate MSPB review. Why doesn't the fact that Congress gave that limited authority, which it said should be rarely exercised, not suggest that under EGAN that there is no blanket authority to avoid MSPB review in these types of cases? We can see that EGAN covers security clearance cases. No, no, these are not security clearance. Under 1069, 1996, DOD goes to Congress and says, we need the authority to prevent MSPB review of certain personnel actions. We want the authority to exempt certain actions, personnel actions from MSPB review. Congress gives DOD that authority, but it's limited to the intelligence components. Doesn't that suggest that the authority that they're seeking here, this blanket authority, doesn't extend across the board to all DOD employees? It certainly does. It shows that Congress has spoken. Throughout the history of the civil service law, DOD has gone to Congress and asked for various categories of employees to be exempt, and Congress has passed laws. Going back to the Summary Suspension Act, which is now Section 7532, DOD drafted that, according to Cole, and requested that legislation, and it was passed. In these cases, DOD, when it decides to take a personnel action, it has a choice, based on a procedure which it created, which it asked Congress for. It doesn't have to go to the board. Bypass already exists to avoid MSPB review. What OPM is asking for here is an alternative to the alternative. They want to bypass not just MSPB review, they want to bypass 7532. They want a special procedure which has no basis in the statute. It has no basis in EGAN. But they got that in EGAN, right? Exactly the same argument. So the availability of the emergency 7532 provision was not a sufficient answer in EGAN. The question is why the security clearance situation is different from the ineligibility for a sensitive position situation. Neither one is particularly statutory. The board said in its EGAN decision that the statute, 7512 and 13, does not address the underlying determination,  same thing as to the ineligibility determination. We're trying to figure out how something that's not expressly addressed by the statute should be accommodated to the other relevant law, the stuff growing out of Article 2. Both Cole and EGAN, both cases, the Supreme Court recognized that access to classified information is a special case. And it's a special case because if you look at EGAN, if the board were to have reinstated EGAN back into its position, it would not just be reinstating it back into its position. It would be giving him access to classified information. And the court in EGAN said only the president can do that. So that's why it's a special case. And if you compare the facts of EGAN to the facts of Northover, it becomes very clear. In Northover, the commissary worker, he was not suspended. He was not removed or even suspended. He was put back in the commissary, the very same physical location, and at a lower-paying job. That's the Northover case. You could not do that with EGAN. Can you imagine telling EGAN, look, you are a national security risk, but we're going to put you back on those Trident submarines. You're going to be there. We're just going to pay you less. I mean, right there, there couldn't be a starker difference between these cases. And so access to classified information… You work on the sub, and you get to review the internal books and records, and we think that too damaging, but we'll let you sweep the floors. It's conceivable. You know, I have not seen a case like that. Of course, what they're relying on is 10450. If you look at that executive order, demotion is not a choice. There's submarine suspension, there's removal. Demotion is not a choice. Northover was demoted. I think that speaks to the fact that his case is not like a security crisis. But the problem is the rule that the board is advocating is not limited to, as I understand it, is not limited to non-critical sensitive positions. It would also allow review of critical sensitive and special sensitive positions, those positions which DOD defines as a person having the potential to cause inestimable damage to national security. So I appreciate that the facts in the case before us are perhaps a little more compelling. There's no question in my mind, am I wrong about that, that the board's rule would cover critical sensitive and special sensitive positions as well, right? I'm not aware of a case involving a critical sensitive or special sensitive employee who does not also have a security clearance. But you'd agree that there's a distinction between classified information and information which may harm the national interest, would you not? A distinction between the national security information in general? There can be two different things. There can be unclassified information which can harm the national interest. You know, last month this court issued a decision in McLean involving a federal air marshal who had access to unclassified, clearly sensitive information about transportation security and possible terrorist plots. And the court issued a decision remanding it back to the board to consider the whistleblower aspect of that case. Clearly that case is more sensitive than either case we have here. Many cases at the board, because... But you're not answering my question. Federal employees do sensitive work. Many cases before the board have national security implications based on that fact that federal employees do sensitive work, sometimes dangerous work, in the case of a federal air marshal. So, certainly, you know, what the board based its decision on is the CSRA. The board's authority is no more and no less than what Congress has given it as an administrative... So in our example that we discussed before about the observation of methods and means of detecting people at the border where somebody has the ability to tell their friends about it and the employer looks and says, gee, they've got relatives in Afghanistan or Chechnya. The board gets to review that on a preponderance of the evidence standard. Assuming this person does not have a security clearance and that they're in a sensitive position and the agency wants to take an action against them, they have a choice, they have an election, they can make it. They can choose to go to the board and if they do, board procedures will apply. They can choose to bypass the board completely if it's a sensitive employee by going through 7532. That's what Congress has... Congress has considered this issue and that is the alternative that Congress has provided in that situation. But the Supreme Court rejects that argument. Only as to predictive judgments as to who has access to classified information. That's the President's area, clearly. National security. But DOD has a national security mission. We agree with that. Yet MSDB has review over DOD employees. It has review over all non-intelligence component employees and it has review over preference-eligible veterans in the intelligence components. Clearly there's sensitive work being done by DOD employees and yet Congress, presumably aware of that, certainly aware of that, has chosen to provide for MSB review anyway. Do you agree with the other counsel for the government that sensitive designation at DOD is coextensive or synonymous with a national security concern? You probably heard the series of questions I asked her. My concern was certainly the new OPM regs would line that up completely clearly, but the old DOD regs, which are the ones that apply to these employees and in fact the forms that apply to these employees, have a whole bunch of boxes which would enable DOD to designate something as sensitive that seems to have no apparent relationship to national security, just money, for example, fiduciary responsibilities. And you can understand why that would be sensitive in the broader sense than national security, but not national security. So I guess my question to you is do you agree with the other counsel for the government when she represented that no, everything designated as sensitive is done so because it is national security? Well, the board's position is that the agencies have unfettered discretion here. It is problematic looking at that Conures worksheet where there's a whole bunch of boxes listing national security issues and none of them are checked. So it's certainly problematic, but the board takes the position that it cannot review the designation of a position as sensitive under whatever criteria they come up with, and it's apparent from their filing that they're still working their policy out. I agree you can't review the designation of sensitive, but do you agree that the designation of sensitive is limited legally to issues involving national security or do you believe that the DOJ has allowed itself to designate positions as sensitive that don't necessarily impact national security? Well, it certainly appears to be the case that they're, you know, in Conures especially, that they may have gone beyond national security. The executive order they're basing it on says it does have to be a national security concern. It's 10450. It's very specific about that. So, I mean, that is a concern. Mr. Geiger, in your blue brief at page 9, you say according to DECA, the Northrop position was designated as critical sensitive because commissary management specialists are able to gain information about troop movements, populations of the base, and so on, and that that information could be used by someone to interfere with military operations. Do you disagree with that? You said right after that the parties have stipulated that it's not classified, but do you disagree with the designation of the position where someone, taking their words, could obtain that information and then interfere with troop movements, so on? Well, again, in these cases, the board will not review that designation, and we believe that's consistent with SKEED. And, you know, whether this court has the authority to do so is probably a different question, but the board as an administrative body does not have that authority. So, basically, in this case, we've accepted what DOD says about that position and the reason they give for the designation. So, if I may, the point about whistleblowing and prohibitive discrimination, there's four things that the board does and looks at when it reviews an adverse action, and one of those things is whether there's a violation of a prohibited personnel practice. Under OPM's theory, that part as well goes away, and I think that's clear, that under their theory that EDN applies here, that the board could not hear discrimination claims, it could not hear whistleblower reprisal claims. So, I don't really think there's any question whether they take an official position or not on that issue. Thank you, Mr. Calker. Ms. Wright, you have six and a half minutes. I want to ask you about the 1996 legislation where DOD went to the Congress and asked, this is not 7532, this is a new statute under 10 U.S.C., went to Congress and said, we'd like the authority to exempt some people within the department from MSPB review, and that was requested only with respect to the intelligence components. How can it be that that authority was necessary if the blanket authority that you say exists under EKEN in fact exists? Well, our argument here, Your Honor, is not that these employees are exempt from the Civil Service Reform Act, and that the intelligence components were, in fact, removed completely, and there are other GAOs. No, they weren't removed completely. The statute says that in particular instances where there's a determination that MSPB review would harm the interests of the United States, they can be exempted, and that authority was conferred at DOD's specific request. How could it be that that authority was necessary if the blanket exemption that you now claim already existed in fact existed? Well, Your Honor, that is a blanket exemption. What we're arguing here is not a blanket exemption. No, it's not a blanket exemption. It is a specific case-by-case request to exempt from MSPB review, and unlike 7532, it doesn't apply. It's not a lifetime bar or anything like that. It's specifically not a lifetime bar. How could it be that that authority was needed if the blanket exemption that you say exists exists? Well, already under Egan, there was a decision that the board's review doesn't go to the security clearance determination, and what our position is here is that the eligibility determinations are the same. You're not answering my question at all. Are you familiar with 1069? I am, Your Honor. Okay, and so why, after Egan, did the Department of Defense go to Congress and say we need this authority to exempt some people from MSPB review because it might be injurious to the United States? And Congress gave that specific authority. If the Egan authority that you say exists exists, why was this statute necessary? Well, even under Egan, Your Honor, as this Court has held and done, there is some review. The action can go before the board. The board can determine whether there was a security clearance, whether it was revoked, and whether procedures were followed. So under that statute, there is no review. It's not our position that these employees don't get review of the adverse action. It's our position that the eligibility determination is not itself an adverse action, Your Honor. If I could turn to the breadth of the board's decisions, and I think my counsel mentioned quite a few times that the record wasn't developed in these cases, and that's true with respect to other agencies, but the board's decisions are very broad. And the board has said clearly that it's going to apply its preponderance of the evidence standard of review to these decisions. It's going to apply its on-duty and off-duty misconduct cases, and it's going to apply in every case where an employee holds a sensitive position but doesn't also have access to classified information. And so although the record's not developed in various ways, the board, in any event, went ahead and made a very categorical and determined legal conclusion in those cases. And I wanted to address the standard of review as well. I think it's clear from the text of the CSRA that if there were to be review, it would be preponderance of the evidence review, and it would be preponderance of the evidence review of an agency's determination that an individual can't hold a national security position clearly consistent with the interests of national security. And in EGAN itself, the Supreme Court said, those two standards of review just aren't compatible. So we would have the board asserting the authority to review an agency's determination, for example, that an employee has contact in a foreign country hospital from the United States. And the board could say, no, we disagree with you, agency. We don't think that this is a security risk under a preponderance of the evidence standard. And the Supreme Court said Congress cannot be offended of that result, and I think the same is true in this case as well. And I will follow up on Judge Wallach's point about the Custom Border Patrol agents who may have certain kinds of information that's not classified. They also have the ability to simply allow things to come into our country that shouldn't. And that in itself is a way to have a material adverse effect on the national security as well. Post-EGAN, the MSPB has reviewed adverse actions that are taken against employees that are occupying sensitive positions. Is there any evidence that there's been adverse consequences that have flown out of the decisions of the MSPB to the national security? Are you speaking about the Adams and Jacobs decisions, Your Honor? I'm talking about the various cases that the MSPB has reviewed after EGAN that have involved these sensitive positions. And I'm asking, is there any adverse consequences that have flowed out of those reviews? Well, to be clear, Your Honor, the board has not reviewed an agency's eligibility determination that an employee cannot occupy a national security sensitive position. The board has not been reviewing those determinations. And I asked about Adams and Jacobs because I think those are distinguishable cases. So the board, in some cases, has looked behind an adverse action. And in Adams and Jacobs, the board did so with respect to qualifications that the agency had imposed on the job. I don't know if there, you know, we can't point to any specific adverse consequences from those decisions. Adams, in fact, held them in favor of the government. And the court affirmed under Rule 36 on appeal. But I just wanted to be clear that the board has not been reviewing the kind of determinations that we're talking about today. These cases have come up. There were a couple of cases that were settled before this court decided them. If there are no further questions, clear to the board that the decisions are contrary to the Supreme Court's decision in EGAN and should therefore be reversed. Thank you. Thank you very much. That concludes our hearing. All rise. The honorable court is adjourned for today.